**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA AUGUSTA DIVISION**

| | | |
|---|---|---|
| JANAY INGRAM-AUGURSON, | * | |
| Plaintiff, | * | |
| v. | * | CV 124-207 |
| MAKOR MANAGEMENT LLC, | * | |
| Defendant. | * | |

**O R D E R**

Before the Court is Defendant's motion for summary judgment. (Doc. 32.) For the following reasons, Defendant's motion for summary judgment is **DENIED**.

## I. BACKGROUND

Plaintiff, an African-American female, was hired by Defendant as the community manager of its Springhouse location in October 2022. (Doc. 36-1, at 1-2.) Defendant operates three properties in Augusta, Georgia: Springhouse, River Creek, and Rocky Creek. (Doc. 34, at 1.) Kelly Dill is the regional manager of all three properties. (Id.) Plaintiff states Springhouse staff members were predominantly Black, while the other two locations had a majority of White staff members and White property managers. (Doc. 36-1, at 2.) Plaintiff's lawsuit pertains to several alleged racially discriminatory practices that occurred at Springhouse and

involved management decisions at the other properties. (Doc. 34, at 3; Doc. 36-2, at 1-2, 4.) Plaintiff states she experienced the "denial of move-in specials," "inadequate maintenance and staffing," "pay disparities," and "exclusion from decision-making authority," at Springhouse because of her race. (Doc. 36-2, at 4.)

During her time as community manager, Plaintiff requested move-in specials for Springhouse which were denied by Dill, and CLASS, Inc. ("CLASS") leasing agents were present at River Creek and Rocky Creek for longer than Springhouse. (Doc. 36-1, at 3-5; Doc. 34, at 4-6.) The Parties dispute whether Springhouse was the strongest performing property at all relevant times, with Defendant claiming Springhouse had the highest occupancy rates and Plaintiff stating Springhouse failed to meet occupancy goals. (Doc. 34, at 4; Doc. 36-1, at 4.) The Parties also dispute the number of maintenance staff workers present at each location, with Plaintiff stating Springhouse had three or less full-time staff while River Creek had five. (Doc. 36-1, at 5.) Defendant states Springhouse had three staff while Rocky Creek and River Creek had two full-time staff and shared a supervisor. (Doc. 34, at 6.) Both Parties contend that Springhouse and River Creek dealt with crime issues, but the Parties dispute which property experienced higher rates of overall and violent crime. (Doc. 36-1, at 5-6; Doc. 34, at 7.) Plaintiff claims "Springhouse had a higher crime

demographic than River Creek and Rocky Creek," and that she requested additional security. (Doc. 36-1, at 6.) Defendant states "[s]evere crime did not occur at Springhouse, and did not require the need for additional security," while River Creek experienced "shootings, DEA raids," and more, which required additional security. (Doc. 34, at 7.)

The River Creek employees were paid higher rates than employees at Springhouse. (Doc. 36-1, at 11; Doc. 34, at 7, 9.) Plaintiff also states a Black assistant manager at Springhouse was offered a lower hourly rate than a White assistant manager. (Doc. 36-1, at 10.) Additionally, Plaintiff contends River Creek was allowed to close early or close on weekends when short-staffed, while Springhouse was not. (Id. at 6.) Further, the Parties dispute the amount of training and coaching opportunities available to Plaintiff and the other property managers. Defendant states all properties "were given the same training and educational opportunities," while Plaintiff states she was excluded from opportunities offered to other managers. (Doc. 34, at 7-8; Doc. 36-2, at 13-14.) Plaintiff also alleges that Dill "sabotaged and harassed Springhouse" when an individual named Joshua Brown applied to live at both Springhouse and River Creek. (Doc. 34, at 9; Doc. 36-1, at 9.)

Plaintiff received a 3.07 out of 5 on her March 7, 2024 performance review, which indicated "meets expectations." (Doc.

36-1, at 7.) The Parties dispute whether Plaintiff had performance issues at work, with Defendant stating Plaintiff "was a difficult employee" who "struggled to de-escalate issues," leading to "favoritism, culture issues, and all[-]around dissatisfaction in the workplace." (Doc. 34, at 11.) Plaintiff states her performance was "strong" and she "was never placed on a performance improvement plan," contrary to Defendant's disciplinary policy, which provided for "progressive correction action" including multiple warnings before termination. (Doc. 36-1, at 8-9, 12.) Plaintiff did not receive formal written warnings or comments on her performance review about her alleged performance issues. (Doc. 34, at 13; Doc. 36-1, at 7.) During a May 2, 2024 maintenance inspection, Plaintiff claims "no major property-wide issues were identified," while Defendant states there were numerous issues at Springhouse under Plaintiff's management, including unanswered resident issues, unaddressed pest control problems, vacant units in disrepair, dirty units, no working vendor keys, a lack of office supplies, and no hand soap in common areas. (Doc. 36-1, at 11-12; Doc. 34, at 12-13.)

Defendant states Dill "was requiring Plaintiff to properly manage her property and to hold her accountable, which was becoming increasingly challenging." (Doc. 34, at 10.) As a result, on July 14, 2024, Dill contacted Human Resources ("HR") to start the process of terminating Plaintiff. (Id. at 11; Doc. 33-3, at 3.)

Plaintiff disputes the claim that HR initiated termination before she filed a grievance. (Doc. 36-2, at 20.) On July 18, 2024, Plaintiff filed a formal grievance with HR alleging discrimination. (Doc. 34, at 14; Doc. 36-1, at 8.) Plaintiff sent a follow-up grievance email to HR on July 29, 2024. (Doc. 36-1, at 8.) Plaintiff was terminated on July 31, 2024. (Id.) Defendant states Dill fired Plaintiff without knowledge of her July 18, 2024 grievance, which Plaintiff disputes. (Doc. 34, at 14; Doc. 36-2, at 26.) Plaintiff states there were multiple individuals involved in her termination decision, including Dennis Gramolini, the Director of Multifamily Operations; Calynn Palmer, Human Resources Generalist; and Dill. (Doc. 36-1, at 8.)

On November 8, 2024, Plaintiff filed her complaint against Defendant alleging claims under 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. (Doc. 1, at 1.) Plaintiff brings four counts: disparate treatment due to race under Title VII of the Civil Rights Act of 1964 ("Title VII") and in violation of 42 U.S.C. § 1981, as well as retaliation under Title VII and in violation of 42 U.S.C. § 1981. (Id. at 7-14.) Plaintiff seeks the following relief: (1) compensatory damages for lost wages, (2) compensation for emotional distress and humiliation, (3) punitive damages, (4) reasonable attorney's fees and costs. (Id. at 15.)

On February 11, 2026, Defendant moved for summary judgment. (Docs. 32, 33.) Plaintiff responded, and Defendant replied. (Docs. 36, 37.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Vaughn v. Ret. Sys. Of Ala. 856 F. App'x 787, 789 (11th Cir. 2021) (citation omitted). The nonmovant must tailor its response to the method by which the movant carries its initial burden. Fitzpatrick, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory

allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided Plaintiff with notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 35.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

## III. DISCUSSION

Defendant argues it is entitled to summary judgment because Plaintiff cannot establish a prima facie case for any of her claims, Plaintiff was terminated for a legitimate, non-discriminatory reason, and Plaintiff's circumstantial evidence does not meet the convincing mosaic standard. (Doc. 33, at 15-23.) Plaintiff argues Defendant's "motion should be denied because genuine disputes of material fact exist regarding Plaintiff's claims of racial discrimination and retaliation." (Doc. 36-3, at 1.)

A plaintiff may establish either a disparate treatment or retaliation claim under Title VII or § 1981 using direct or circumstantial evidence. Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1310 (11th Cir. 2016) (retaliation); Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (discrimination). "Direct evidence of discrimination is evidence, that, 'if believed, proves the existence of a fact in issue without inference or presumption.'" Schoenfeld, 168 F.3d at 1266 (citation omitted). "Only the most blatant remarks, whose intent could be nothing other than to discriminate" qualify as direct evidence. Id. (citation omitted). Neither Party points to any blatantly discriminatory remarks in the record. As a result, Plaintiff's claims must be based on circumstantial evidence.

Where a plaintiff's discrimination and retaliation claims are based on circumstantial evidence, the claims are analyzed under the McDonnell Douglas burden shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff carries the burden to establish a prima facie case of disparate treatment or retaliation. Id. If plaintiff establishes a prima facie case, "[t]he burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the employment action." Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1135 (11th Cir. 2020) (citation omitted). Once "the

defendant [has carried] this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (citation omitted).

The Court addresses Plaintiff's claims in turn.

**A. Disparate Treatment Under Title VII and § 1981**

The Court reviews Plaintiff's disparate treatment claims under the McDonnell Douglas framework below.

1. Prima Facie Case

Defendant argues Plaintiff cannot establish a prima facie case of discrimination under Title VII or § 1981 because she fails to show that she was treated differently than those outside of her protected class and that she was qualified to perform her job. (Doc. 33, at 15.) Further, Defendant argues that Plaintiff's case centers around her feelings that her property was treated differently than the other two Augusta properties rather than how she was personally treated differently. (Id. at 16.) Additionally, Defendant argues Plaintiff was unqualified because she "was provided training on each and every task" and she "was not fulfilling her obligations." (Id.)

Plaintiff argues that she establishes a prima facie case of discrimination because (1) she is a Black female, so she is a member of a protected class; (2) she was paid less and received

less training than similarly situated White employees, and she was terminated which qualifies as an adverse employment action; and (3) she worked as a property manager for five years prior to her role with Defendant and she was hired into the Community Director role; thus, Defendant considered her qualified when she was hired. (Doc. 36-3, at 15-18.) Additionally, Plaintiff asserts she identified valid comparators in the other property managers and shows they were treated more favorably, as "[t]he unequal allocation of company-controlled resources under the same supervisor supports an inference of disparate treatment." (Id. at 19-20.)

To establish a prima facie case of race discrimination, including a disparate treatment claim under Title VII or § 1981, the plaintiff must show: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably."[1] Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted).

The Court finds Plaintiff establishes a prima facie case of disparate treatment. Defendant does not provide arguments on whether Plaintiff is a member of a protected class or if she was

---

[1] "The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context." Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022) (citation omitted).

subjected to an adverse employment action; thus, the Court considers those elements satisfied.

As to the second element, Defendant argues that Plaintiff was unqualified for her position because she "was provided training on each and every task" and "was not fulfilling her obligations." (Doc. 33, at 16.) Plaintiff's affidavit and deposition indicate she worked as a property manager for another company from 2017 through 2022. (Doc. 36-17, at 4; Doc. 33-2, at 6.) The Eleventh Circuit has found that "if a plaintiff has enjoyed a long tenure at a certain position, we can infer that he or she is qualified to hold that particular position." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (citations omitted). Based on Plaintiff's work history, the Court is satisfied there is evidence that she was qualified to work as a property manager for Defendant.

Additionally, the Court finds Plaintiff brings evidence regarding the final element of a prima facie case: whether her employer treated similarly situated employees outside her class more favorably. Crawford, 529 F.3d at 970. Notably, several of Plaintiff's claims pertain to Defendant's property management decisions that indicate a difference in the treatment of Defendant's property locations rather than decisions that affected Plaintiff personally. The denial of move-in specials, lack of CLASS agents, fewer maintenance staff at Springhouse, and Dill

approving a lease application at another property instead of Springhouse do not speak to the direct disparate treatment of Plaintiff. (Doc. 36-1, at 3-5, 9.) However, there is evidence Plaintiff received less pay than similarly situated White managers, which speaks directly to the treatment of Plaintiff compared to the other property managers outside of her protected class. (Doc. 33-2, at 19; Doc. 33-1, at 9.)

There is also evidence through Plaintiff's affidavit that other property managers were treated more favorably: "Tyler Reynolds was provided opportunities related to property sales, audits, due diligence, and travel assignments that were not offered to me," and named other managers that also received additional work opportunities, including "Cory, Darcey Young . . . and Brooke Jackson." (Doc. 36-17, at 4-5.) In her deposition, Plaintiff states that Tyler Reynolds was paid more than her and identifies him as an individual similarly situated to her as the property manager at River Creek. (Doc. 33-2, at 19, 24.) There is evidence that Tyler Reynolds is similarly situated to Plaintiff because he was in the same position, employed at a property owned by the same employer, and supervised by the same individual, Dill. (Doc. 33-2, at 12; Doc. 33-1, at 2.) As such, Plaintiff has established a prima facie case of disparate treatment under Title VII and § 1981.

2. Legitimate Reason and Pretext

Defendant argues that even if Plaintiff establishes a prima facie case, she was terminated for a legitimate, non-discriminatory reason: she failed to fulfill her job duties and had a "complete inability to perform the essential job functions." (Doc. 33, at 17-18.) Plaintiff argues Defendant's reasons are pretext for discrimination, stating Defendant's failure to follow its own progressive discipline policy before terminating Plaintiff and Plaintiff's lack of notice as to her alleged performance issues show that "[a] reasonable factfinder could conclude the Defendant's stated rationale was . . . pretextual, masking discriminatory intent." (Doc. 36-3, at 25.)

In determining whether a defendant has provided a sufficient reason, the burden is "exceedingly light." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769-70 (11th Cir. 2005) (citation omitted). "[A]n employer must simply advance an explanation for its action that is not discriminatory in nature." Lee v. Safe-Dry Carpet and Upholstery, No. 20-14275, 2021 WL 3829028, at *3 (11th Cir. Aug. 27, 2021) (citation omitted). Once "the defendant [has carried] this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Hicks, 509 U.S. at 515 (citation omitted). To show pretext, a plaintiff must show

"*both* that the [employer's] reason was false, *and* that discrimination was the real reason" for the adverse action. Id. "A plaintiff cannot rebut a reason by simply quarreling with the wisdom of that reason." Patterson v. Ga. Pac., LLC, 38 F.4th 1336, 1352 (11th Cir. 2022) (citation and internal quotations omitted).

The Court finds Defendant has offered a legitimate reason for Plaintiff's termination, but there is a genuine issue of material fact as to whether Defendant's reason was pretextual. Defendant claims Plaintiff was terminated for poor performance and states "many of these issues were not formally documented in her performance review," while the evidence confirms she did not receive write-ups, disciplinary actions or negative performance reviews prior to her termination. (Doc. 33-2, at 23; Doc. 33-1, at 17; Doc. 36-9, at 1-7.) Even Plaintiff's March 7, 2024 performance review indicated she was meeting or exceeding expectations in thirteen of fourteen job performance categories. (Doc. 36-9, at 1-7.) The record also indicates Defendant had a progressive discipline policy involving multiple levels of corrective action that were available prior to termination, which Defendant did not utilize with Plaintiff. (Doc. 36-12, at 1-2.) It is unclear whether Defendant generally adhered to the policy when handling other employee performance issues; however, "when an employer has established a progressive discipline policy, a plaintiff may establish pretext by showing that the policy was not

followed in [her] case." Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 873 (11th Cir. 2011) (citation omitted).

Given the above, Plaintiff has carried her burden under McDonnell Douglas, so the Court refrains from further analyzing the evidence under the convincing mosaic standard. As a result, Defendant's motion for summary judgment as to Plaintiff's disparate treatment claims is **DENIED**.

**B. Retaliation Under Title VII and § 1981**

The Court reviews Plaintiff's retaliation claims under the McDonnell Douglas framework below.

1. Prima Facie Case

Defendant argues Plaintiff has not established a prima facie case for retaliation because Plaintiff's protected activity was handled properly and there is no evidence of a causal connection between the termination and the protected activity. (Doc. 33, at 19-21.) Plaintiff argues that she engaged in protected activity when she complained about racial discrimination to HR, she was terminated, which qualifies as an adverse employment action, and a causal connection exists because (1) there was a short timeframe between her complaints and termination, and (2) Defendant admits that HR was involved in the termination decision, so at least one of the decisionmakers was aware of Plaintiff's complaints. (Doc. 36-3, at 21-22.)

To establish a prima facie case of retaliation under Title VII or § 1981, a plaintiff must prove that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was some causal relation between the two events. Crawford, 529 F.3d at 970 (citation omitted); Harris v. Bd. of Trs. Univ. of Ala., 846 F. Supp. 2d 1223, 1240-42 (N.D. Ala. 2012) ("[T]he prima facie elements that govern Plaintiff's § 1981 retaliation claim are essentially the same as those governing Title VII retaliation.")

The Parties do not dispute that Plaintiff engaged in statutorily protected activity or that she suffered a materially adverse employment action. Therefore, the issue is whether Plaintiff's evidence shows there was a causal relation between both events. The Court finds it does.

"[A] plaintiff making a Title VII [or § 1981] retaliation claim must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Smith v. City of Fort Pierce, 565 F. App'x 774, 778 (11th Cir. 2014) (citation and internal quotation marks omitted). "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Patterson, 38 F.4th at 1351 (citation omitted).

> The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. But mere temporal proximity, without more, must be very close. A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.

Thomas v. Cooper Lighting, Inc., 506 F.3d. 1361, 1364 (11th Cir. 2007) (citations and internal quotation marks omitted). In terms of temporal proximity, the Eleventh Circuit has found that the adverse employment action must have occurred within a few months of the alleged protected activity, absent other circumstantial evidence. See Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986) ("The short period of time [(one month)] . . . between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation.").

Plaintiff submitted a formal complaint for race discrimination to Palmer with HR on July 18, 2024. (Doc. 36-16, at 1-7.) Plaintiff made a second complaint on July 29, 2024, and she was terminated on July 31, 2024. (Doc. 36-15, at 1; Doc. 36-17, at 3.) Given this, the evidence shows only thirteen days passed from the date of Plaintiff's first complaint to her termination. (Doc. 36-16, at 1-7; Doc. 36-17, at 3.) Additionally, Defendant admits Palmer was involved in Plaintiff's

termination decision, as well as Dill and Gramolini. (Doc. 36-11, at 12.) Following Eleventh Circuit precedent, Plaintiff's evidence supports a causal relation because it shows a decisionmaker had knowledge of her complaints and less than two weeks passed from the date of her first complaint to the adverse employment action. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008); Mihoubi v. Caribou Coffee Co., Inc., 288 F. App'x 551, 557 (11th Cir. 2008) (finding that an "eight day period is very close" when analyzing whether a genuine issue of material fact of causal connection exists based on temporal proximity); Williams v. Waste Mgmt., Inc., 411 F. App'x 226, 229 (11th Cir. 2011) (holding a causal connection "may be inferred by close temporal proximity between the protected activity and the adverse employment action").

The Court therefore finds Plaintiff shows there was a causal relation between her complaints and her termination. As a result, the Court concludes Plaintiff has sufficiently established a prima facie case for her retaliation claims.

2. Legitimate Reason and Pretext

Defendant asserts, despite Plaintiff's prima facie case, that it had a legitimate, non-retaliatory reason for Plaintiff's termination. (Doc. 33, at 17.) Namely, Defendant contends Plaintiff was terminated because she "failed to fulfill her jobs duties" and had a "complete inability to perform the essential job

functions of the position." (Id. at 17-18.) Plaintiff argues Defendant's reasons for termination are pretextual. (Doc. 36-3, at 23.)

The Court already found Plaintiff created a genuine issue of material fact as to pretext when analyzing her disparate treatment claims above. Given the issue of pretext for Plaintiff's retaliation claims pertains to her termination and relies on the same facts as her disparate treatment claims, the Court finds Plaintiff has also carried her burden on pretext as to these claims.

Based on this evidence, the Court finds Defendant provided a sufficient reason for Plaintiff's termination, and Plaintiff has created an issue of material fact as to pretext. As such, the Court refrains from further analyzing the evidence under the convincing mosaic standard, and Defendant's motion for summary judgment as to Plaintiff's retaliation claims is **DENIED.**

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 32) is **DENIED.** The case shall proceed to trial in due course.

**ORDER ENTERED** at Augusta, Georgia, this 10th day of September, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA